1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

KYLE L. TOVAR,

9

Plaintiff,

10

v.

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

12

13

Defendant.

NO.  C12-1539-MJP-JPD

REPORT AND
RECOMMENDATION

14

Plaintiff Kyle L. Tovar appeals the final decision of the Commissioner of the Social

15

Security Administration ("Commissioner") which denied his applications for Disability

16

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19

the Commissioner's decision be REVERSED and REMANDED.

20

21

22

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are
ordered to update the caption on all future filings with the Court.**

23

24

REPORT AND RECOMMENDATION - 1

1

## I.     FACTS AND PROCEDURAL HISTORY

2     At the time of the administrative hearing, plaintiff was a twenty-nine year old man with

3 an eighth grade education, and some community college courses.  Administrative Record

4 ("AR") at 28, 43-47.  His past work experience includes employment as a fast food worker,

5 sales representative, cook, and painter.  AR at 65, 186.

6     Plaintiff filed applications for SSI payments and DIB on May 26, 2009, alleging a

7 disability onset date of January 31, 2008.  AR at 39.  Plaintiff asserts that he is disabled due to

8 metastic testicular cancer (status post chemotherapy), neuropathy in his fingers and feet,

9 degenerative disc disease ("DDD") of the lumbar spine, opiate and prescription medications

10 dependence, bipolar disorder, post-traumatic stress disorder ("PTSD"), and borderline

11 personality disorder.  AR at 20, 40, 51.

12     The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 78-

13 85, 88-92.  Plaintiff requested a hearing, which took place on March 29, 2011.   AR at 36-73.

14 On April 27, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits

15 based on her finding that plaintiff could perform his past relevant work, or alternatively, could

16 perform other jobs existing in the national economy.  AR at 27-29.

17     Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied

18 on July 30, 2012, making the ALJ's ruling the "final decision" of the Commissioner as that

19 term is defined by 42 U.S.C. § 405(g).  AR at 1-5.  On September 12, 2012, plaintiff timely

20 filed the present action challenging the Commissioner's decision.  Dkt. 3.

21

## II.     JURISDICTION

22     Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

23 405(g) and 1383(c)(3).

24

1

### III.   STANDARD OF REVIEW

2        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3   social security benefits when the ALJ's findings are based on legal error or not supported by

4   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

5   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

6   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

7   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

8   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

9   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

10  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

11  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

12  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

13  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

14  must be upheld.  *Id.*

15       The Court may direct an award of benefits where "the record has been fully developed

16  and further administrative proceedings would serve no useful purpose."  *McCartey v.*

17  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

18  (9th Cir. 1996)).  The Court may find that this occurs when:

19          (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
            claimant's evidence; (2) there are no outstanding issues that must be resolved
20          before a determination of disability can be made; and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled if he
21          considered the claimant's evidence.

22  *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

23  erroneously rejected evidence may be credited when all three elements are met).

24

IV.     EVALUATING DISABILITY

As the claimant, Mr. Tovar bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On April 27, 2011, the ALJ issued a decision finding the following:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2.   The claimant has not engaged in substantial gainful activity since January 31, 2008, the alleged onset date.

3.   The claimant has the following severe impairments: metastatic testicular cancer, status post chemotherapy; degenerative disc disease (DDD) of the lumbar spine; opiate and prescription medications dependence; bipolar disorder; post traumatic stress disorder (PTS); and borderline personality disorder.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations.  He is able to perform simple tasks requiring occasional superficial contact with the general public and occasional supervision. The claimant must also avoid concentrated exposure to vibration.

6.   The claimant is capable of performing past relevant work as a sales representative and cook.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

7.   Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is able to perform.  Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

8.   The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2008, through the date of this decision.

AR at 20-29.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in evaluating Dr. Fligstein's opinion?

2.   Did the ALJ err in evaluating the "other source" opinions of plaintiff's mental health therapist, Ms. Riley?

Dkt. 14 at 1; Dkt. 17 at 2.

## VII.    DISCUSSION

A.   The ALJ Did Not Err in Evaluating Dr. Fligstein's Opinion

   1.   *Standards for Reviewing Medical Evidence*

   As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater

REPORT AND RECOMMENDATION - 6

opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social

1  Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

2  more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

3  non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

4  consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

5  957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

6                              *2.    Dr. Fligstein*

7           Non-examining medical consultant Diane Fligstein, Ph.D. reviewed plaintiff's medical

8  records and completed a mental residual functional capacity assessment ("MRFCA") and

9  psychiatric review technique ("PRT") on October 13, 2009.  AR at 529-46.  Dr. Fligstein

10  diagnosed plaintiff with bipolar II disorder, PTSD, a borderline personality disorder, and

11  polysubstance abuse in early remission.  AR at 533-43.  In the PRT, Dr. Fligstein noted that

12  plaintiff has moderate difficulties in maintaining concentration, persistence, or pace.  AR at

13  543.  Similarly, in the more detailed MRFCA, Dr. Fligstein assessed moderate limitations with

14  respect to plaintiff's ability to maintain attention and concentration for extended periods,

15  complete a normal workday and workweek without interruptions from psychologically based

16  symptoms and perform at a consistent pace without an unreasonable number of rest periods,

17  and respond appropriately to changes in the work setting.  AR at 529-30.  In the narrative

18  portion of the MRFCA, Dr. Fligstein opined that plaintiff's "mood and personality issues

19  reduce his ability to persist and concentrate, but he is able to persistent and concentrate the

20  majority of the time."  AR at 532.

21           The ALJ summarized Dr. Fligstein's diagnoses, including Dr. Fligstein's opinion that

22  "the claimant's mood and personality issues reduced his ability to persist and concentrate, but

23  he is able to persist and concentrate the majority of the time . . . This assessment is confirmed

24  by Dr. Kent Reade as well."  AR at 25.  The ALJ indicated that she "generally agrees with Dr.

REPORT AND RECOMMENDATION - 8

1    Fligstein's assessment, as reflected in the given [RFC] above and accords these doctors'

2    opinions significant weight." AR at 25.

3            Plaintiff contends that the ALJ failed to adopt all the limitations Dr. Fligstein assessed,

4    because the RFC "does not indicate that Plaintiff had any reduction in his ability to persist and

5    concentrate." Dkt. 14 at 14.  Plaintiff argues that this error was harmful because "the ALJ

6    asked the vocational expert whether a person could sustain a job if due to various reasons he

7    would be off task about 15 percent of the work day, such as taking additional breaks, not doing

8    their work, leaving early, or calling in absent." *Id.* (citing AR at 70).  The vocational expert

9    responded that there is no tolerance in semi-skilled or unskilled work for absenteeism in the

10   first year of employment, and "after that it's only 2.4 percent.  So 15 percent of the time would

11   be way, way over what anybody would tolerate." *Id.*  Thus, plaintiff contends that "even if

12   Plaintiff can persist and concentrate the majority of the time, as found by Dr. Fligstein,

13   Plaintiff's recognized reduced ability to persist and concentrate a (sic) even a minority of the

14   time may be quite significant to his ability to sustain work in a national economy, based on the

15   vocational expert's testimony." *Id.*

16           The Commissioner responds that the ALJ properly incorporated Dr. Fligstein's findings

17   into the RFC assessment.  Dkt. 17 at 3 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

18   1223 (9th Cir. 2010) (holding that there is no conflict to resolve when an ALJ incorporates

19   limitations that are "entirely consistent," if not identical, to a doctor's assessed limitations into

20   the RFC finding)).  The Commissioner argues that in this case, "the ALJ gave significant

21   weight to Dr. Fligstein's opinion that Plaintiff's 'mood and personality issues reduced his

22   ability to persist and concentrate, but he is able to persist and concentrate the majority of the

23   time.'  Consistent with this opinion, the ALJ found Plaintiff could understand, remember, and

24   perform only 'simple tasks requiring occasional superficial contact with the general public and

1    occasional supervision.'" Dkt. 17 at 4 (citing AR at 532). The Commissioner asserts that

2    "these functional limitations were consistent with Dr. Fligstein's opinion because simple tasks

3    require less concentration and persistence. An ALJ properly incorporates limitations in

4    concentration, persistent, and pace when, consistent with medical evidence, the ALJ limits the

5    claimant to simple tasks." *Id.* (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75 (9th

6    Cir. 2008)). Specifically, "[h]ere, as in *Stubbs-Danielson*, Dr. Fligstein found that Plaintiff, in

7    spite of his impairments, was not significantly limited in his ability to 'carry out very short and

8    simple instructions' or to 'sustain an ordinary routine without special supervision.'" *Id.* (citing

9    AR at 529). Thus, the Commissioner contends that the ALJ properly translated Dr. Fligstein's

10   opinion into a functional limitation to simple tasks. *Id.*

11         Plaintiff has failed to demonstrate any error by the ALJ in evaluating Dr. Fligstein's

12   opinion. As argued by the Commissioner, the Ninth Circuit has found that "an ALJ's

13   assessment of a claimant adequately captures restrictions related to concentration, persistence,

14   or pace where the assessment is consistent with restrictions identified in the medical

15   testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (citing

16   *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) and *Smith v. Halter*, 307 F.3d 377,

17   379 (6th Cir. 2001)). In *Stubbs-Danielson*, as in this case, the medical evidence in the record

18   included an opinion assessing a moderate limitation in concentration, persistence, or pace. 539

19   F.3d at 1173. However, the medical evidence also included an additional opinion that despite

20   the claimant's "slow pace, both in thinking & actions" and moderate limitations in other areas,

21   the claimant "retained the ability to 'carry out simple tasks as evidenced by her ability to do

22   housework, shopping, work on hobbies, cooking and reading.'" *Id.* The court concluded that

23   the ALJ appropriately translated the claimant's condition, "including the pace and mental

24   limitations, into the only concrete restrictions available to him—[the physician's]

REPORT AND RECOMMENDATION - 10

recommended restriction to 'simple tasks.'" *Id.* at 1174-75.  Finally, the Ninth Circuit noted that this outcome was consistent with decisions from other circuits.  *See id.* at 1174 (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding that where a state psychologist both identified the claimant as having deficiencies of concentration, persistence or pace and pronounced the claimant able to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," the ALJ's hypothetical including an ability to perform "simple, routine, repetitive tasks" adequately captured the claimant's deficiencies in concentration, persistence, or pace)).

Here, as in *Stubbs-Danielson* and *Howard*, the ALJ's limitation to "simple tasks" in the RFC assessment adequately captured Dr. Fligstein's opinion that although plaintiff's "mood and personality issues reduce his ability to persist and concentrate . . . he is able to persistent and concentrate the majority of the time."  AR at 532.  Like in *Stubbs-Danielson*, the ALJ's limitation to "simple tasks" was consistent with the other restrictions identified in the medical testimony.  Dr. Fligstein found that plaintiff was "not significantly limited" with respect to his ability to "carry out very short and simple instructions" or even "carry out detailed instructions," sustain an ordinary routine without special supervision, or make simple work-related decisions.  AR at 529.  As discussed above, the ALJ afforded Dr. Fligstein's opinions regarding plaintiff's functional limitations "significant weight" in formulating plaintiff's RFC, and plaintiff does not contend that this was an error.

Accordingly, the ALJ did not err in evaluating Dr. Fligstein's opinion.  Consistent with Dr. Fligstein's MRFCA, the ALJ properly translated plaintiff's moderate limitations with respect to his ability to persist and concentrate into a limitation to "simple tasks."  *See Stubbs-Danielson*, 539 F.3d at 1174; *Howard*, 255 F.3d at 582.

B.   The ALJ Erred in Evaluating the "Other Source" Testimony of Plaintiff's Treating Mental Health Therapist, Trish Riley, MA, MHP, CDPT

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").  If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

The failure to disregard lay testimony without comment, however, may still be deemed harmless where the error is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Stout v. Comm'r, Social Sec. Admin.,* 454 F.3d 1050 1055 (9th Cir. 2006)).  As recently held by the Ninth Circuit, "'an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011), and further describing harmless error as occurring where an "ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony[.]").

REPORT AND RECOMMENDATION - 12

1    Trish Riley, MA, MHP, CDPT treated plaintiff at the Seattle Counseling Service

2    from October 2009 through the March 29, 2011 date of the administrative hearing.  AR at 523-

3    28, 598-604, 748-85.[3]  In addition to Ms. Riley's treatment notes, Ms. Riley provided several

4    written evaluations documenting her observations of plaintiff, and expressing her opinions

5    regarding his functional limitations.  The two most relevant evaluations were completed in

6    January and December 2010.

7    On January 20, 2010, Ms. Riley completed a psychological evaluation form for DSHS.

8    AR at 626.  Ms. Riley described plaintiff's attitude during the evaluation as suspicious and

9    guarded, his affect as labile, and noted that "over the course of the day, [plaintiff] exhibited

10   mood swings consistent with a manic episode."  AR at 626.  She also wrote that he "expresses

11   thoughts of persecution . . . that are often grandiose," and "exhibits behaviors consistent with

12   poor judgment."  AR at 626.  In sum, Ms. Riley indicated that she had observed the following

13   "severe" symptoms: mood swings, irritability, anxiety, hopelessness, depressed mood, and

14   mania.  AR at 621.  She estimated a global assessment of functioning ("GAF") score of 45.[4]

15   With respect to functional limitations, Ms. Riley considered plaintiff severely limited in his

16   ability to relate appropriately to co-workers and supervisors, exercise judgment and make

17   decisions, interact appropriately with public contacts, and respond appropriately to and tolerate

18   the pressures and expectations of a normal work setting.  AR at 623.  She indicated that his

19   _____

       [3] Plaintiff concedes that Ms. Riley's treatment notes "are not detailed."  Dkt. 14 at 5.

20     [4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
     clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC

21   ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
     A GAF score falls within a particular 10-point range if either the symptom severity or the level

22   of functioning falls within the range.  Id. at 32.  For example, a GAF score of 51-60 indicates
     "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty

23   in social or occupational functioning."  Id. at 34.  A GAF score of 41-50 indicates "[s]erious
     symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment

24   in social, occupational, or school functioning," such as the lack of friends and/or the inability
     to keep a job.  Id.

REPORT AND RECOMMENDATION - 13

1    treatment had resulted in increased awareness and coping skills and therefore "he is better able

2    to manage his mental health symptoms," but he had not increased his level of functioning with

3    consistency.  AR at 623.

4         Ms. Riley completed a second psychological evaluation on December 13, 2010.  AR at

5    700-04.   In that evaluation, Ms. Riley again noted that plaintiff's symptoms included "mood

6    swings, irritability, severe anxiety, decreased appetite, sleep disturbance, hopelessness, mania,

7    paranoid thoughts/auditory hallucinations."  AR at 700-01.  She noted that his current GAF

8    score remained at 45, reflecting "serious symptoms [that] cause clinically significant distress

9    and impairment in all areas of functioning."  AR at 701.  With respect to plaintiff's functional

10   limitations, Ms. Riley indicated that he had "marked" limitations in his ability to understand,

11   remember and persist in tasks by following complex instructions of three or more steps, take

12   appropriate precautions against normal hazards, communicate and perform effectively in a

13   work setting with public contact, and maintain appropriate behavior in a work setting.  AR at

14   702.   She observed that plaintiff "exhibits paranoia under stress which can interfere with

15   interpersonal communication/contact," "has difficulty tracking in his mental health sessions

16   and struggles to remember details of recent experiences," and "displays impulsivity which has

17   at times put himself and others in physical danger."  AR at 702.  She noted that plaintiff's bi-

18   weekly mental health treatment "will likely increase [his] ability to manage symptoms related

19   to mental health; but not necessarily his level of functioning."  AR at 703.  Finally, she

20   estimated that he will be impaired for a minimum of two years.  AR at 703.

21        The ALJ briefly summarized Ms. Riley's findings in her January 2010 evaluation, but

22   failed to acknowledge Ms. Riley's December 2010 evaluation.  Specifically, the ALJ stated

23   that "Trish Riley examined the claimant and noted that, although the claimant is better able to

24   manage his mental health symptoms, he will be moderately to severely impaired due to mood

swings, irritability, anxiety, sleep disturbance, hopelessness, depressed mood and mania or elation, for a minimum of one year." AR at 25. In addition, "these symptoms would affect his ability to get out of bed; his concentration and focus; control his impulses, racing thoughts and agitation, tolerate others; and keep from being excessively and constantly worried." AR at 25.[5] The ALJ concluded that although Ms. Riley "is not an acceptable medical source according to Social Security Regulations, the undersigned has considered Ms. Riley's statements as well, giving them some weight in regards to the claimant's mental functionality, as reflected in the claimant's [RFC] above." AR at 25-26.

Plaintiff asserts that the ALJ erred in evaluating Ms. Riley's opinions. Specifically, although the ALJ's decision mentions Ms. Riley's opinions from January and August 2010, the ALJ fails to mention Ms. Riley's December 2010 opinion at all. Dkt. 14 at 11 (citing AR at 25). With respect to the opinions the ALJ did discuss, plaintiff points out that the ALJ claims to have afforded Ms. Riley's opinions "some weight in regards to the claimant's mental functionality," but the ALJ's "discussion provides no reasons why the ALJ reached findings that conflicted with Ms. Riley's opinions." *Id*. Plaintiff contends that "[b]ecause the ALJ's findings were inconsistent with Ms. Riley's opinions, she was required to provide germane reasons in her decision for rejecting them." *Id.*

Plaintiff acknowledges that an ALJ's failure to give germane reasons for rejecting lay witness testimony may be harmless if the ALJ gave clear and convincing reasons for rejecting plaintiff's testimony which apply "with equal force" to the testimony of the lay witness. *Id*. at 12 (citing *Molina*, 674 F.3d at 1122). However, plaintiff argues that "if the lay testimony

---

[5] Similarly, the ALJ noted that "on August 25, 2010, Ms. Riley again evaluated the claimant and noted a [GAF] score of 45 stating 'serious impairment in all areas of functioning.' Ms. Riley has also stated that 'it should be noted that his mental health symptoms predate his substance use history.'" AR at 25.

1    identifies limitations not considered by the ALJ, is uncontradicted by anything in the record,

2    and is highly probative of an individual's ability to work in a competitive work environment,

3    then the ALJ's failure to address such testimony is not harmless." *Id.* Plaintiff contends that

4    "Ms. Riley is the only treating source to offer detailed opinions regarding Plaintiff's

5    functioning. While the State Agency's physician's opinion is less restrictive than Ms. Riley's

6    opinion, Plaintiff had just barely begun treatment at Seattle Counseling Service when their

7    opinions were offered, and they only reviewed notes from September and November 2009."

8    *Id*. (citing AR at 629-30). Furthermore, "Ms. Riley's opinions explain how her observations of

9    Plaintiff's symptoms and functioning on examination supported the limitations she assessed

10   and are not based solely on Plaintiff's reports." *Id*. at 13 (citing *Ryan v. Commissioner*, 528

11   F.3d 1194, 1199-1200 (9th Cir. 2008) (holding that the ALJ does not validly reject an

12   examining physician's opinion by questioning the credibility of the patient's complaints where

13   the doctor does not discredit those complaints and supports his ultimate opinion with his own

14   observations)).

15          The Commissioner concedes that the ALJ did not mention Ms. Riley's opinion from

16   December 13, 2010. However, the Commissioner argues that the ALJ was not required to

17   discuss this evaluation because an ALJ need only explain why "significant probative evidence

18   has been rejected." Dkt. 17 at 4 (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

19   1984)). The Commissioner argues that "Ms. Riley's December opinion is largely duplicative

20   of an opinion she made in January of the same year, which the ALJ did discuss. For example,

21   in both January and December, Ms. Riley found Plaintiff suffered moderate limitations in his

22   ability to follow simple instructions and marked limitation in his ability to follow complex

23   instructions." *Id*. at 5 (citing AR at 623, 702). In fact, "the December opinion shows some

24   improvement over January opinion: in the January opinion, Ms. Riley assessed four severe

REPORT AND RECOMMENDATION - 16

1   limitations, while in December she found no severe limitations." *Id*. (citing AR at 623, 702).

2   Thus, the Commissioner argues that because the December opinion was largely duplicative of,

3   and certainly no more restrictive than, the January opinion, Ms. Riley's December 2010

4   opinion "was neither significant nor probative.  Therefore, the ALJ was not required to discuss

5   the later opinion." *Id.*

6       With respect to the opinions of Ms. Riley that the ALJ did address, the Commissioner

7   concedes that the ALJ "did not credit Ms. Riley's opinions" in the RFC assessment and also

8   "did not give reasons for rejecting Ms. Riley's opinion." *Id*.  Nevertheless, the Commissioner

9   argues that "the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony, and

10  those reasons apply with equal force to Ms. Riley's opinion." *Id*. at 6.  Specifically, the

11  Commissioner asserts that the ALJ rejected plaintiff's credibility because his ability to

12  maintain a 3.5 GPA in community college classes showed "concentration, persistence and pace

13  to perform within the [RFC] set forth above," AR at 24, and the plaintiff's decision not to take

14  mental health medications as prescribed also "indicated that the symptoms may not have been

15  as limiting as the claimant has alleged with this application." AR at 24.  The Commissioner

16  contends that "these reasons for discounting Plaintiff's testimony apply with equal force to Ms.

17  Riley's opinion of Plaintiff's functional capacity, because Ms. Riley described functional

18  limitations that were strikingly similar to Plaintiff's own testimony." Dkt. 17 at 6 (citing AR at

19  623, 702-03, 784).

20      Finally, the Commissioner contends that the ALJ's failure to evaluate Ms. Riley's

21  opinions were harmless because "the testimony is contradicted by more reliable medical

22  evidence that the ALJ credited," namely, Dr. Fligstein's October 2009 opinions. *Id*. at 7 (citing

23  *Molina*, 674 F.3d at 1118-19).  The Commissioner argues that "medical evidence from

24  acceptable medical sources is considered more reliable than evidence from non-acceptable

REPORT AND RECOMMENDATION - 17

1   medical sources," and therefore "[b]ecause the ALJ credited Dr. Fligstein's more reliable

2   opinion, which contradicted Ms. Riley's opinion, any error in evaluating Ms. Riley's opinion

3   was harmless." *Id.* (citing SSR 06-03p) ("The fact that a [contradictory] medical opinion is

4   from an 'acceptable medical source' is a factor that may justify giving that opinion greater

5   weight than an opinion from a medical source who is not an 'acceptable medical source[.]'").

6          The ALJ's failure to provide germane reasons for rejecting Ms. Riley's opinions was

7   not harmless error.  As a threshold matter, the Court rejects the Commissioner's argument that

8   Ms. Riley's opinions do not constitute significant or probative evidence that must be

9   considered by the ALJ.  As plaintiff's treating mental health counselor, Ms. Riley's opinions

10  regarding plaintiff's level of functioning constitute probative evidence.  *See* SSR 06-03p

11  (noting that opinions from "medical sources who are not 'acceptable medical sources' . . . are

12  important and should be evaluated on key issues such as impairment severity and functional

13  effects, along with the other relevant evidence in the file.").  Furthermore, Ms. Riley's

14  December 2010 psychological evaluation was not simply duplicative of her prior evaluations.

15  Among other differences, she estimated that plaintiff will likely remain impaired for a

16  minimum of two years, as opposed to one year.  AR at 703.  The ALJ cannot simple disregard

17  Ms. Riley's opinions without comment.

18         Contrary to the Commissioner's assertion that the ALJ's reasons for discounting

19  plaintiff's testimony apply with equal force to Ms. Riley's opinions, Ms. Riley does not merely

20  reiterate the plaintiff's own testimony.  As described above, Ms. Riley's evaluations include

21  her own clinical observations, and the ALJ has not provided any reasons for discounting these

22  observations.  For example, Ms. Riley observed that plaintiff "has difficulty tracking in his

23  mental health sessions and struggles to remember details of recent experiences."  AR at 702.

24  During one of her meetings with the plaintiff, she observed that "over the course of the day,

REPORT AND RECOMMENDATION - 18

1  [plaintiff] exhibited mood swings consistent with a manic episode," and assessed functional

2  limitations consistent with her clinical observations.  AR at 626.   In light of the differences

3  between the content of Ms. Riley's evaluations and plaintiff's testimony, the Court cannot find

4  that the ALJ's reasons for discounting plaintiff's testimony apply "equally well" to Ms. Riley's

5  opinions, as was the case in *Molina*.  *Compare Molina*, 674 F.3d at 1121-22 (9th Cir. 2012)

6  (holding that the ALJ's failure to provide germane reasons for discounting third party

7  statements of the claimant's family members constituted harmless error where the statements

8  "did not describe any limitations beyond those Molina herself described" and was contradicted

9  by the claimant's own activities as well as an examining physician's observations).

10         Finally, the Court rejects the Commissioner's argument that under *Molina*, "any error

11  in evaluating lay witness testimony is harmless 'where the testimony is contradicted by more

12  reliable medical evidence that the ALJ credited,'" and "because the ALJ credited Dr.

13  Fligstein's more reliable opinion [about plaintiff's functional limitations], which contradicted

14  Ms. Riley's opinion, any error in evaluating Ms. Riley's opinion was harmless."  Dkt. 17 at 7

15  (citing *Molina*, 674 F.3d at 1118-19).[6]  Again, the Court finds *Molina* distinguishable.  In

16  *Molina*, the Ninth Circuit deemed the ALJ's failure to discuss the lay witness testimony

17  harmless error because, among other reasons, the third party statements described limitations

18  which had been properly rejected by the ALJ based upon an examining physician's

19  observations.  *Id.* at 1122 ("Specifically, the ALJ determined that Molina's claim that her

20

---

21         [6] Specifically, the language cited by the Commissioner originates from the Ninth
   Circuit's rejection of the argument that "*Stout* . . . creat[ed] a rule that an ALJ's failure to give
22  individual reasons for rejecting a lay witness's material testimony is per se prejudicial[.]"
   *Molina*, 674 F.3d at 1118.  The Ninth Circuit noted that "Molina has not suggested any basis
23  for concluding that an ALJ's failure to discuss a lay witness's testimony expressly is likely to
   affect the outcome in situations where the testimony is similar to other testimony that the ALJ
24  validly discounted, *or where the testimony is contradicted by more reliable medical evidence
   that the ALJ credited*."  *Id.* at 1118-19 (emphasis added).

REPORT AND RECOMMENDATION - 19

1   anxiety disorder made her unable to work was contradicted . . . by Dr. Yost's evaluation[.]").

2   Here, the contradictory medical opinion at issue is from Dr. Fligstein, a non-examining

3   medical consultant.  As the plaintiff points out, Dr. Fligstein's conflicting opinion was based

4   on her review of the medical records in October 2009, the same month that plaintiff began his

5   treatment with Ms. Riley at the Seattle Counseling Service.  The opinions of the other state

6   agency physicians, who "affirmed as written" Dr. Fligstein's October 13, 2009 PRTF and

7   MRFC, indicated that the only "Seattle Counseling notes" they had reviewed were from

8   September 23, 2009 and November 20, 2009.  AR at 629-30.  Thus, these non-examining

9   doctors' opinions are not *ipso facto* "more reliable" than Ms. Riley's opinions.

10        Moreover, although the ALJ indicated that she afforded "significant weight" to Dr.

11   Fligstein's opinion, the ALJ also asserted that Ms. Riley's opinions were deserving of "some

12   weight in regards to the claimant's mental functionality."  AR at 26.  The undersigned

13   therefore declines to find that Ms. Riley's opinions were clearly "contradicted by more reliable

14   evidence that the ALJ credited."  *Molina*, 674 F.3d at 1118-19.  *Cf. Dhillon v. Astrue*, 2013

15   WL 705470, *10 (D. Or. January 30, 2013); *Edwards v. Astrue*, 2012 WL 5259912, *6 (E.D.

16   Wash. October 23, 2012); *Cruise v. Astrue*, 2012 WL 5037257, *9 (D. Or. September 28,

17   2012).

18        Accordingly, this case must be remanded so that the ALJ can reconsider Ms. Riley's

19   opinions, and explicitly address the weight to be afforded to her opinions regarding plaintiff's

20   functional limitations.  If necessary, the ALJ shall reconsider the effect of Ms. Riley's opinions

21   on any other findings.

22

23

24

REPORT AND RECOMMENDATION - 20

1

VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4   instructions.  A proposed order accompanies this Report and Recommendation.

5          DATED this 31st day of May, 2013.

6

7          _____
           JAMES P. DONOHUE
8          United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 21